IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2017 MAY 10  P 5: 04

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| LAURA QUARLES, as the Administratrix of the Estate of Gregory Quarles, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CASE NO. 2:17-cv-308 |
| TENNESSEE STEEL HAULERS, INC.; JOSHUA LAWRENCE FAIRCLOTH; et al., | ) ) ) ) |
| Defendants. | ) ) |

## NOTICE OF REMOVAL

Defendant Tennessee Steel Haulers, Inc. ("TSH") hereby notices its removal of this action pursuant to 28 U.S.C. §§ 1441(a) and 1446. In support of removal, TSH states as follows:

## I.   BACKGROUND

1.   The underlying action arises out of the death of Gregory Quarles, who was involved in a fatal automobile accident in Montgomery County, Alabama on January 31, 2017. (*See* Complaint, attached hereto as Exhibit "A"). On April 10, 2017, wrongful death proceedings were commenced in the Circuit Court of Montgomery County, Alabama by Laura Quarles ("Plaintiff") in her capacity as Administratrix of the Estate of Gregory Quarles. (*Id.*). The action was docketed as case number 2017-CV-900540. (*Id.*).

2.   Plaintiff alleges that the fatal accident occurred when the vehicle being driven by Gregory Quarles was struck from the rear by a commercial tractor-trailer being driven by Joshua Faircloth ("Faircloth"). (*Id.* at ¶¶ 17-19). Plaintiff further alleges that Faircloth was operating the tractor-trailer on behalf of TSH. (*Id.* at ¶ 20). Plaintiff therefore asserts claims jointly against TSH and Faircloth for negligence (Count One) and wantonness (Count Two), along with an independent claim against TSH for negligent entrustment (Count Three).

3.  As will be discussed below, complete diversity of citizenship exists between TSH, Faircloth, and Gregory Quarles.

4.  In addition to asserting claims against TSH and Faircloth, however, Plaintiff also has included Walter O. Griffin, Jr., Pedro H. Fernandez, and Trans Texas Express, Inc. as party defendants. It is alleged that those parties were involved in a prior automobile accident in the southbound lanes of Interstate 85, that the cleanup from the prior accident caused traffic to slow, and that the prior accident thus was a proximate cause of the fatal accident subsequently occurring in the northbound lanes. (*Id.* at ¶¶ 15 & 16). Plaintiff's allegations against those parties include claims for negligence (Count Four) and wantonness (Count Five).

5.  TSH contends that the inclusion of claims arising out of an entirely separate accident on the opposite side of Interstate 85—and that can be shown to have occurred several hours before the fatal accident—is a blatant attempt to render this action non-removable from the Circuit Court of Montgomery County, Alabama in that one of the participants in the prior accident (Walter O. Griffin, Jr.) is a citizen of Montgomery County, Alabama. (Complaint at ¶ 4).

6.  As a matter of law, Plaintiff cannot demonstrate the possibility of a viable claim against either Walter O. Griffin, Jr. or the other parties from the first accident. Such parties have been fraudulently joined, and their citizenship is now due to be ignored for purposes of diversity jurisdiction. *See, e.g., Broadway v. State Farm Mut. Auto. Ins. Co.*, 4 F.Supp. 3d 1271, 1275-76 (M.D. Ala. 2014) ("The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction.") (quoting *Sellers v. Foremost Ins. Co.*, 924 F.Supp. 1116, 1118 (M.D. Ala. 1996)); *Culpepper v. Stryker Corp.*, 968 F.Supp. 2d 1144, 1150 (M.D. Ala. 2013) (same).

## II.    JURISDICTION

7.    Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." TSH submits that this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and that the proper parties are citizens of different States. *See* 28 U.S.C. § 1441(b)(2) (limiting consideration of citizenship solely to defendants that are "properly joined").

### A.    The amount-in-controversy requirement is clearly satisfied in an Alabama wrongful death action.

8.    Plaintiff has not specified the recovery being sought in this action but simply requests damages "in an amount a jury may assess." (Complaint at Count One, Count Two, and Count Three). When no specific demand is set forth, it is well settled that the defendant merely has to prove by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds the jurisdictional threshold. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). That burden is clearly met here.

9.    Plaintiff's claims in this action seek recovery for wrongful death. Because the measure of damages recoverable under Alabama's Wrongful Death Act (ALA. CODE § 6-5-410) are exclusively punitive in nature, the Eleventh Circuit has recognized that the amount-in-controversy generally will be presumed as "more likely than not" exceeding $75,000.00 so as to satisfy the jurisdictional requirement of 28 U.S.C. § 1332(a). *See, e.g., Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2012). *Roe* also was a wrongful death action in which the plaintiff generically requested damages "in an amount to be determined by a jury." 613 F.3d at 1060. Although no specific amount of damages was itemized, the removing defendant argued

3

that it was "facially apparent" that the case met the $75,000.00 amount-in-controversy requirement." *Id.* The district court agreed, and the plaintiff appealed. *Id.*

10.     In examining whether the defendant had met its burden of demonstrating amount-in-controversy, the Eleventh Circuit noted that its precedent "permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* at 1061-62 (quoting *Pretka v. Kilter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010)). The Eleventh Circuit further noted that "a district court need not 'suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount.'" *Id.* (quoting *Pretka*, 608 F.3d at 770).

11.     After concluding that the district court was authorized to "rely[] on its judicial experience and common sense" when evaluating amount-in-controversy, the Eleventh Circuit turned its attention to applying those principles to claims for wrongful death:

> In calculating a damage award, an Alabama Wrongful Death Act jury is instructed to consider: (1) the finality of death, (2) the propriety of punishing the defendant, (3) whether the defendant could have prevented the victim's death, (4) how difficult it would have been for the defendant to have prevented the death, and (5) the public's interest in deterring others from engaging in conduct like the defendant's. *Tillis Trucking*, 748 So. 2d at 889. In assessing punitive damages, the worse the defendant's conduct was, the greater the damages should be. *See Ala. Power Co. v. Turner*, 575 So. 2d 551, 554–55 (Ala. 1991); *Alabama Pattern Jury Instructions: Civil* 11A.28 (2d ed.).
> ***
> Viewed in light of these factors, judicial experience and common sense dictate that the value of Roe's claims (as pled) more likely than not exceeds the minimum jurisdictional requirement.

*Id.* at 1063-65.

12.     Here, Plaintiff's allegations are that Faircloth "wantonly operated his vehicle and acted with reckless disregard to the consequences by failing to comply with the Alabama Rules of the Road." (Complaint at ¶ 28; *see also* Complaint at ¶¶ 29-31 for allegations of wanton "speed,"

4

"lookout," and "attention"). It has been observed that claims of wantonness "involve[] a high degree of culpability, making the need for punishment and deterrence all the more exigent." *Roe v. Michelin North America, Inc.*, 637 F.Supp. 2d 995, 998 (M.D. Ala. 2009) (holding that "[i]t not only is 'readily deducible' and 'clear' that [an Alabama wrongful death claim alleging wantonness] involves more (and, indeed, much more) than $75,000, it is nearly impossible to conclude otherwise") (emphasis added). It also has been observed that the public policy behind Alabama's Wrongful Death Act is to place a value on human life that is "beyond measure." *Roe*, 613 F.3d at 1065 (quoting *Campbell v. Williams*, 638 So. 2d 804, 811 (Ala. 1994)). Accordingly, and as in *Roe*, judicial experience and common sense now mandate a finding that the amount-in-controversy more likely than not exceeds the requisite $75,000.00 for jurisdiction under 28 U.S.C. § 1332(a). *See Roe*, 613 F.3d at 1064 ("[W]hen a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled."). *See also Marchant v. Mane*, 2012 WL 2389331, *3 (M.D. Ala. June 25, 2012) (unreported) (concluding that amount-in-controversy was met in claim arising under Alabama's Wrongful Death Act).[1]

**B. Complete diversity exists between the parties to the fatal accident.**

13. It is apparent from the face of the Complaint that the fatal accident occurred when Faircloth "collided with the rear of Mr. Quarles' vehicle pushing him into another northbound 18-wheeler resulting in an explosion and fire." (Complaint at ¶ 18). The Uniform Traffic Crash

---

[1] Published statements by counsel for Plaintiff provide further support that damages in excess of $75,000.00 are being sought in this action: "We hope this lawsuit will serve as a message and a warning to those who operate heavy trucks that there are serious consequences to reckless operation of these massive vehicles." (*See* Exhibit "B" hereto") (emphasis added).

Report also designates the parties to the fatal accident as (1) Faircloth, (2) Gregory Quarles, and (3) the driver of the other commercial tractor-trailer. (*See* Exhibit "C" hereto).

14.     According to the allegations of the Complaint, Faircloth "is believed to be a resident of Grantville, Georgia." (Complaint at ¶ 3). It is alleged that Faircloth was driving on behalf of TSH at the time of the accident, and the Complaint alleges TSH "to be a foreign corporation with its principal place of business being located in Nashville, Tennessee." (*Id.* at ¶ 2). Such allegations of citizenship are confirmed by the attached sworn affidavits. (*See* Exhibits "D" and "E" hereto). It therefore cannot be disputed that complete diversity exists between Faircloth, TSH, and Quarles—who was an Alabama citizen. (*See* Complaint at ¶ 1; *see also* Exhibit "C").[2]

15.     Because all parties to the fatal accident are diverse, and because the amount-in-controversy threshold is satisfied, removal of this wrongful death action is proper. Plaintiff's effort to prevent removal by naming a non-diverse party from a prior accident is specious and amounts to fraudulent joinder.

**C.     Parties from the first accident have been fraudulently joined in an attempt to prevent removal.**

16.     "[The] right of removal cannot be defeated by a fraudulent joinder of a resident defendant with no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921). A defendant is deemed to have been fraudulently joined when "no possibility exists under Alabama law that [the plaintiff] can state a cause of action against it[]." *See, e.g., Bloodsworth v. Smith & Nephew,* 417 F.Supp. 2d 1249, 1250 (M.D. Ala. 2006).

---

[2] Although a participant in the fatal accident as the driver of the lead commercial tractor-trailer, Randall George was not made a party to this action. Even were he to be made a party, complete diversity would still exist in that he is a citizen of the State of Michigan. (*See* Exhibit "C"). The omission of a diverse participant in the <u>fatal accident</u> compared with the inclusion of a non-diverse participant from the <u>first accident</u> again highlights Plaintiff's ulterior motive of destroying diversity jurisdiction through a fraudulent joinder.

Although a removing defendant bears the burden of establishing fraudulent joinder, and although doubts generally should be resolved in favor of plaintiffs, the Eleventh Circuit has admonished that the potential for legal liability against a resident defendant "must be reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (emphasis added). "If a defendant was fraudulently joined, its citizenship is not considered for the purpose of determining diversity jurisdiction." *Russell Petroleum Co. v. Environ Products, Inc.*, 333 F.Supp. 2d 1228, 1231 (M.D. Ala. 2004).

17.     It is readily apparent that all participants from the first accident—but particularly Walter O. Griffin, Jr., an Alabama citizen—have been fraudulently joined. As previously stated, the Complaint concedes that the first accident occurred in the southbound lanes of travel on Interstate 85 and that the fatal accident involving Gregory Quarles occurred as a part of a separate impact in the northbound lanes. There is no allegation or evidence that any vehicle involved in the first accident (or any debris from the first accident) impacted any vehicle involved in the fatal accident. Nor is there any allegation or evidence that any vehicle involved in the first accident (or any debris from the first accident) encroached into the northbound lanes of travel. The only allegations purporting to connect the first accident to the fatal accident are that "[t]raffic was slowed to a stop in the northbound lane as a result of an accident that had occurred in the I-85 southbound lanes and median" and that "Faircloth did not slow for the traffic but instead collided with the rear of Mr. Quarles' vehicle." (Complaint at ¶¶ 14, 18).

18.     Not only does the Complaint reflect the occurrence of two separate and distinct accidents, the Uniform Traffic Crash Report from the fatal accident does not list any driver/vehicle from the first accident as being involved. (*See* Exhibit "C" hereto). To the contrary, the first accident resulted in a wholly separate Uniform Traffic Crash Report and was given a wholly distinct case number. (*See* Exhibit "F" hereto). Perhaps most significantly, a comparison of the

7

two accident reports reveals a time separation in excess of two-and-a-half hours between the first accident (5:50 p.m.) and the fatal accident (8:31 p.m.). (*Compare* Exhibits "C" and "F"; *compare also* Exhibit "D" at ¶ 3 with Exhibit "G" at ¶ 3).

> **i.    No legal duty would have been owed/breached as to Gregory Quarles by any participant in the first accident.**

19.    This Court has recognized that claims for negligence and wantonness arising under Alabama law must be predicated upon the existence of a legal duty running from the defendant to the plaintiff. *See, e.g., Edmonson v. Cooper Cameron Corp.*, 374 F.Supp. 2d 1103, 1106 (M.D. Ala. 2005). It is equally axiomatic that,"[i]n Alabama, the existence of a duty is a strictly legal question to be determined by the court." *Dibiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) (citations omitted).

> In determining whether a duty exists, the courts consider factors including public policy; social considerations; foreseeability; the nature of the defendant's activity; the relationship between the parties; and the type of possible injury or harm. *Patrick v. Union State Bank*, 681 So. 2d at 1368 (citations omitted). "'The key factor is whether the injury was foreseeable by the defendant.'" *Id.* at 1368 (quoting *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993)).

*Key v. Compass Bank, Inc.*, 826 So. 2d 159, 170 (Ala. 2001) (affirming judgment as matter of law where the plaintiffs "failed to cite any authority supporting their argument that Compass owed a duty ..."); *see also Dibiasi*, 988 So. 2d at 461 ("In addition to foreseeability, Alabama courts look to a number of factors to determine whether a duty exists, including '(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.'") (citation omitted); *Ex parte Wild West Social Club, Inc.*, 806 So. 2d 1235, 1239-40 (Ala. 2001). With respect to foreseeability as relating to the duty analysis, the Alabama Supreme Court has noted that "foreseeability must be based on the probability that harm will occur, rather than the bare possibility." *See Butler v. Warehousing and Moving Co., Inc.*, 686 So. 2d 291, 293 (Ala. 1996); *see also Ex parte Wild West Social Club, Inc.*, 806 So. 2d at 1241.

8

20.     Even construing the allegations of the Complaint most favorably to her position, Plaintiff has not stated any legal duty that would have been owed/breached as to Gregory Quarles by Walter O. Griffin, Jr. and/or any other participant from the first accident. It is apparent from the face of the Complaint that any alleged misconduct by participants in the first accident would have occurred within the <u>southbound</u> lanes of travel. [Doc. 1 at ¶¶ 37 & 42]. However, there is no suggestion from the Complaint that any vehicle or debris from the first accident directly impacted any drivers in the <u>northbound</u> lanes. From the best that can be surmised, Plaintiff is merely alleging that the first accident served as a "distraction" to northbound drivers—such as Faircloth—causing a congestion of traffic and ultimately the fatal accident. [*Id.* at ¶¶ 39 & 44].

21.     To accept such a "creating a distraction" theory of negligence would impose virtually boundless legal duties upon unsuspecting persons in almost every imaginable context. With specific respect to automobile accidents, where traffic can become congested for even the most mundane of occurrences, the prospect of such personal injury or wrongful death liability as Plaintiff advocates is especially frightening. For example, Plaintiff's logic would impose potential liability upon a speeding motorist if a resultant traffic stop caused "onlooker delay" from which an accident subsequently occurred between other motorists. Disabled motorists, construction crews, and even joggers likewise could face liability for "creating distractions." No prior decision from any Alabama appellate court has extended the concept of duty even remotely close to such an unmanageable and unpredictable degree. Nor should this Court set such precedent.

22.     Allegations that an automobile accident could theoretically result in traffic congestion, and that a later driver could theoretically be distracted such that he/she fails to notice the congestion, does not make a subsequent fatality in the opposite lanes of travel legally

9

"foreseeable" as Plaintiff suggests.[3]  [*Id.* at ¶¶ 38, 43].  To the contrary, "foreseeability must be based on the probability that harm will occur, rather than the bare possibility." *See, e.g., Butler,* 686 So. 2d at 293 (emphasis added).  Because Plaintiff cannot demonstrate any legal duty that was owed or breach as to Gregory Quarles in relation to the first accident, there is no possibility that Plaintiff can establish a claim against the participants from the first accident so as to destroy diversity jurisdiction. *See, e.g., Davis v. Wal-Mart Stores, Inc.,* 64 F.Supp. 2d 1176 (M.D. Ala. 1999) ("[B]ecause the court finds that the third-party driver's actions were unforeseeable to Defendant at the time it acted, the court finds that Defendant had no duty and thus was neither negligent nor wanton.") (emphasis added).[4]

### ii. Alabama law will not support a finding of proximate causation between the first accident and the fatal accident.

23.    Even assuming the existence of some arguable duty, the fundamental question then would become whether Plaintiff could reasonably (and not merely theoretically) establish proximate causation despite the undisputed geographic and temporal distance between the first accident and the fatal accident.  Under settled principles of proximate causation, that inquiry must be answered in the negative. *See, e.g., Martin v. Arnold,* 643 So. 2d 564, 567 (Ala. 1994) (enumerating proximate cause as an essential element of claims for both negligence and wantonness).

---

[3] Plaintiff never actually pleads that a subsequent accident was foreseeable but only pleads that a congestion of traffic was foreseeable. [*Id.* at ¶¶ 38, 43]. Again, however, a congestion of traffic could theoretically be "foreseeable" under a variety of circumstances. Taken to its logical conclusion, an at-fault party in a low speed "fender bender" could be held liable for wrongful death if another motorist in the opposite lanes of travel breached an independent duty of care by causing a subsequent accident while traffic remained congested. That is essentially Plaintiff's argument.

[4] Alabama and other courts also frequently discuss "foreseeability" in the context of proximate causation, which is addressed in more detail in Sections II.C.ii and II.C.iii below. Those arguments should apply with equal force to this Court's evaluation of whether Plaintiff can state a cognizable legal duty.

24.    The longstanding view of proximate cause in Alabama can be found in, among

many other cases, *City of Mobile v. Harvard*:

> For an act to constitute actionable negligence, there must be not only some causal
> connection between the negligent act complained of and the injury suffered, but
> also the connection must be by a natural and unbroken sequence, without
> intervening, efficient causes, so that, but for the negligence of the defendant, the
> injury would not have occurred. The negligence must not only be a cause, it must
> be the proximate cause of the injury. *Western Railway of Alabama v. Mutch*, 97
> Ala. 194, 11 So. 894, 21 L.R.A. 316; *Mobile City Lines, Inc. v. Proctor*, 272 Ala.
> 217, 130 So. 2d 388.
>
> Where it is determined that some prior negligent act merely created the condition
> or gave rise to the occasion and after the creation of said condition an intervening,
> independent agency produces an injury, the party guilty of the first negligent act
> is not liable because his negligence was but a remote cause of the injury. *Louisville
> & N.R. Co. v. Maddox*, 236 Ala. 594, 13 So. 849, 118 A.L.R. 1318; *Watt v. Combs*,
> 244 Ala. 31, 12 So. 2d 189, 145 A.L.R. 667. And, as said by this court in *Garrett
> v. Louisville & N.R. Co.*, 196 Ala. 52, 71 So. 685, 686:
>
> 'The law, in its practical administration in cases of this kind, regards only
> proximate or immediate, and not remote, causes, and, in ascertaining which is
> proximate and which remote, refuses to indulge in metaphysical niceties. Where,
> in the sequence of events between the original default and the final mischief, an
> entirely independent and unrelated cause intervenes, and is of itself sufficient to
> stand as the cause of the mischief, the second cause is ordinarily regarded as the
> proximate cause and the other as the remote cause.' *Atchison, etc., Ry. Co. v.
> Calhoun*, 213 U.S. 1, 29 Sup.Ct. 321, 53 L.Ed. 671; *Milwaukee, etc., R. Co. v.
> Kellogg*, 94 U.S. 469, 24 L.Ed. 256.'
>
> However negligent a party may have been in some particular, he is accountable
> only to those who are injured as a proximate result of such negligence. Where
> some independent agency intervenes and is the immediate cause of the injury, the
> party guilty of the prior negligence is not liable. The proximate cause of an injury
> is the primary moving cause without which it would not have occurred, but which,
> in the natural and probable sequence of events, produces the injury. *Smith v.
> Alabama Water Service Company, supra*; *Williams v. Wicker*, 235 Ala. 348, 179
> So. 250; *Mobile City Lines, Inc. v. Proctor, supra*.

268 So. 2d 805 (Ala. 1972) (finding that any negligence in maintaining fire suppression equipment

"was no more than a remote cause" of death when the plaintiff's decedent was involved in an

automobile accident and died from burns and respiratory tract injury). *See also Nance v.

Southerland*, 79 So. 2d 612, 624 (Ala. 2010) (articulating standard and determining lack of

proximate cause as a matter of law); *Albert v. Hsu*, 602 So. 2d 895, 897-98 (Ala. 1992) (explaining that lack of foreseeability as a matter of law precludes finding of proximate causation).

25.     In *Davis v. Wal-Mart Stores, Inc.*, this Court examined Alabama's standard of proximate causation and determined as a matter of law that liability for damages sustained in a subsequent automobile accident could not be imposed on the basis of an uninvolved defendant's alleged act of negligence earlier in the causal chain. 64 F.Supp. 2d 1176. It was alleged in *Davis* that the defendant store had left a shipment of flowers in an unloading zone rather than moving them into a designated fenced-in area for display. *Id.* at 1178. The plaintiff was looking at the flowers when he was struck by a vehicle. *Id.* Claims were brought against the defendant store for negligence and wantonness on the theory that its misfeasance in leaving the flowers in the unloading zone "exposed pedestrians such as [the plaintiff] to a greater risk of being struck by a vehicle" and that "pedestrian/automobile collisions were foreseeable ... and were the natural consequence of [the defendant's] negligence and wantonness." *Id.* at 1178-79.

26.     On the defendant's motion for summary judgment, this Court expressly held that the plaintiff could not demonstrate sufficient causation to state a cognizable claim against the defendant store. *Id.* at 1181 ("[B]ecause the court finds that the third-party driver's actions were unforeseeable to Defendant at the time it acted, the court finds that Defendant had no duty and thus was neither negligent nor wanton. Accordingly, Plaintiffs' negligence/wantonness claim ... against Defendant is due to be dismissed.") (emphasis added). In reaching that result, this Court looked to general principles of State law as espoused by Alabama courts that:

- "however negligent some party may have been in some particular [instance], he is accountable only to those injured as a proximate result of his negligence";

- "a defendant who creates a dangerous 'condition' is not responsible for the plaintiff's injury that results from the intervention of another agency, if at the time of the defendant's original negligence the intervening agency could not reasonably be foreseen"; and

12

- "an unforeseen agency ... breaks the chain of causation that might have linked the defendant's negligence to the plaintiff's injury."

*Id.* at 1179 (quoting *Gilmore v. Shell Oil Co.*, 613 So. 2d 1272, 1274-75 (Ala. 1993)). Stated differently, it was properly recognized that under Alabama law an "injury must be a natural and probable consequence of the negligent act or omission" in order to be actionable. *Id.* (quoting *Gilmore*, 613 So. 2d at 1275).

27.     In addition to the general principles cited from *Gilmore*, the *Davis* opinion relied heavily on the Alabama Supreme Court's decision in *Morgan v. City of Tuscaloosa*, 108 So. 2d 342 (Ala. 1959), for purposes of imposing reasonable bounds upon proximate causation. *Id.* at 1180. The allegation in *Morgan* was that the plaintiff's decedent had been fatally struck while crossing a street after water from a backed-up drainage sewer splashed onto the windshield of an approaching vehicle and obscured the vision of the driver. 108 So. 2d at 344-45. An attempt thus was made to impose liability upon the City of Tuscaloosa for its alleged negligence in maintaining the sewer. *Id.* In rejecting that argument, however, the Alabama Supreme Court held that the conduct of the driver should be considered as the sole proximate cause of the decedent's death and that any alleged conduct by the City of Tuscaloosa "should be treated as merely a circumstance of the accident and not as a concurring proximate cause." *Id.* at 345. *See also id.* at 344 ("It is true that the law will consider only the proximate cause and not a remote cause where there are two or more causes of injury.").

28.     It would be entirely inconsistent with the above principles to surmise here that the participants in the first accident could potentially be held liable for the death of Gregory Quarles. To so conclude would overlook the sheer happenstance of subsequent events and would presume that the participants in the first accident reasonably should have anticipated (1) that scene cleanup efforts might remain ongoing over two hours later, (2) that such efforts might cause congestion of traffic in the opposite lane of travel, (3) that a driver in the opposite lane of travel might not observe

13

the congestion, and (4) that such other driver's inattentiveness might result in a severe or fatal accident. Such fortuitous events closely mirror those found wanting in *Morgan*:

> Upon a careful consideration we have concluded that the alleged acts of the City of Tuscaloosa in failing to build suitable drains or properly maintain the same, was nothing more than a remote cause of the accident. It clearly appears that after the condition had been created, an independent agency produced the injury. We do not consider that it could be known by common experience that the failure to properly construct or maintain a drain, as alleged, would cause water to back up in the street, that a car would run into the water, that the water would splash upon the windshield and blind the driver and thereby cause the driver to lose control of the car and strike a pedestrian then walking in the street or in the water alleged to have been impounded. It is our considered opinion that from the facts alleged in the complaint, reasonable men would conclude that the defect in the drain was not the proximate cause of the death of the appellant's son. ...

108 So. 2d at 345. Indeed, to hold otherwise would stretch the concept of proximate cause beyond its logical and legal limits and would effectively substitute a "butterfly effect" analysis in its place.

29.     As demonstrated in prior decisions, the issue of proximate cause largely turns on foreseeability. In that regard, however, "foreseeability must be based on the probability that harm will occur, rather than the bare possibility." *Ex parte Wild West Social Club, Inc.*, 806 So. 2d at 1241 (granting summary judgment for the defendant where "[t]he bare chance that an ejected bar patron might be attacked by a security guard is not sufficient to impose liability on the operator of the bar"). As stated even more succinctly in *Alabama Power Co. v. Moore*, "[f]oreseeability is not based on 'bare possibilit[ies].'" 899 So. 2d 975, 980 (Ala. 2004) (reversing denial of judgment as a matter of law due to independent, intervening act that was sufficient to sever the chain of proximate causation).

30.     Accordingly, because it cannot reasonably be demonstrated that the participants in the first accident could have foreseen that a second accident would probably occur several hours

14

later and in the opposite lanes of travel, Plaintiff cannot demonstrate a claim against the participants in the first accident sufficient to overcome a fraudulent joinder challenge.[5]

### iii.   Other jurisdictions are in accord that no cause of action is presented under such facts as are now at issue.

31.     Several jurisdictions have examined the question of causation/foreseeability in the context of multi-vehicle accidents and have held as a matter of law that liability for a subsequent accident cannot be extended back to participants in a prior accident. The decision of the Kansas Court of Appeals in *Hale v. Brown* is remarkably on point. 167 P. 3d 362 (Kan. Ct. App. 2008). *Hale* involved an initial accident in which a driver ran off the roadway and into a line of trees. *Id.* at 363. After the arrival of emergency responders, traffic began to back up. *Id.* Approximately 35 minutes later, a driver "failed to respond quickly enough to the traffic congestion" and "struck the plaintiff's car from behind." *Id.* The driver from the first accident successfully moved for a dismissal on the basis that no recognized legal theory existed upon which relief could be granted against him. *Id.*

---

[5] It should be noted that the only resident defendant named in the Complaint is Walter O. Griffin, Jr. Yet the Complaint also names the other participant in the first accident (Pedro H. Fernandez) as a defendant on an alternate theory of liability for causing that accident. (Complaint at ¶¶ 5, 37-45). Pedro H. Fernandez is alleged to be a Texas resident who was acting in the line and scope of a Texas corporation. (*Id.* at ¶¶ 5-6). The fact that Plaintiff cannot provide evidence that the first accident was actually caused by the Alabama defendant provides further support for the fraudulent joinder argument asserted by TSH, *i.e.*, any argument against removal would require (1) the presumption that a motorist should foresee the occurrence of a subsequent automobile accident several hours later in the opposite lanes of travel and (2) the presumption that Walter O. Griffin, Jr. was responsible for the first accident so as to render him a proper defendant. Respectfully, this Court should not indulge such speculative and creative pleading devices as a means to circumvent an otherwise removable wrongful death action between diverse parties. *Legg*, 428 F.3d at 1325 ("The removal process was created by Congress to protect defendants. Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'") (citation omitted).

32.     In evaluating the lower court's dismissal, the Kansas Court of Appeals noted that tort liability in Kansas requires a showing of proximate causation, which demands that an injury be demonstrated to have occurred "in natural and continuous sequence unbroken by an efficient intervening cause, ... the injury being the natural and probable consequence of the wrongful act.'" *Id.* (citations omitted). The court further noted that Kansas law limited proximate causation to "probable" consequences as opposed to "all possible consequences." *Id.* (citations omitted). The court therefore held that the claims against the driver involved in the first accident failed to state a cognizable claim and were properly dismissed:

> We do not believe that the average Kansan whose negligence caused her own car to run completely off the roadway would expect to be liable to someone injured 35 minutes later when a third driver was distracted by the commotion. Nor should she. Such an event is not sufficiently foreseeable for liability under traditional foreseeability analysis, which is fully consistent with commonsense expectations. The judgment of the district court granting defendants' motion to dismiss is therefore affirmed.

*Id.* at 367 (emphasis added).[6]

33.     A similar decision was reached by the Supreme Court of Montana in *O'Connor v. Nigg,* wherein that court likewise concluded as a matter of law that a driver from an earlier accident could not be liable for a subsequently occurring accident.  838 P.2d 422 (Mont. 1992). In *Nigg,* eyewitnesses and emergency responders stopped to render assistance after a driver lost control of his vehicle and came to rest in the median of an interstate highway. *Id.* at 423. Approximately

---

[6] The general principles of proximate causation quoted by the court in *Hale* mirror those that have been repeatedly applied in Alabama. *Compare* general standard cited in *Hale* to language from *Harvard,* 268 So. 2d at 805 (explaining that proximate cause requires injury "by a natural and unbroken sequence, without intervening, efficient causes"); *compare also* "probability" versus "possibility" analysis discussed in *Hale* with *Ex parte Wild West Social Club, Inc.,* 806 So. 2d at 1241 ("[F]oreseeability must be based on the probability that harm will occur, rather than the bare possibility.").

16

5 minutes later, the plaintiff approached from the opposite direction of travel. *Id.* While slowing for the scene, the plaintiff's vehicle was struck from the rear. *Id.*

34.     In rejecting any liability on the part of the driver involved in the initial accident, the court examined whether the second accident could be said to have occurred "in a natural continuous sequence of events, which might reasonably be expected to follow" or whether "the latter's act of negligence in causing the accident was of such a character as not reasonably to be expected to happen in the natural sequence of events." *Id.* at 424 (quoting *Halsey v. Uithof*, 532 P.2d 686 (Mont. 1975)). In resolving that question, the court concluded that the first driver simply was not obligated to foresee or anticipate that traffic would come to a near stop in the opposite lane of travel and/or that another driver would fail to observe such traffic conditions. *Id.* at 425. Thus, the court held that "the acts of the plaintiff and the person who collided with him were independent, intervening causes of the plaintiff's injury as a matter of law." *Id.*

35.     Both *Hale* and *O'Connor* relied in part upon *Williams v. Smith* as decided by the North Carolina Court of Appeals. 314 S.E. 2d 279 (N.C. Ct. App. 1984). The plaintiff in *Williams* was struck by a vehicle while directing traffic around a prior accident. *Id.* at 280. However, the evidence established that the second accident occurred "some twenty to forty-five minutes [after the first accident]." *Id.* Noting that "[p]roximate cause is that cause, unbroken by any new or independent cause, which produces the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudent could have foreseen that a result was probable under all of the facts then existing," the court held that the first accident was simply "too remote to constitute the basis of a cause of action against [the first driver]." *Id.*

36.     Various other State court decisions are in accord with the above holdings. *See, e.g., Southwell v. Riverdale Transit Corp.*, 149 A.D.2d 385, 386 (N.Y. 1989) ("That accident, in which appellant sustained no injuries, had become a completed occurrence at least 45 minutes before the

17

second accident. Consequently, it was not the proximate or legal cause of the second accident in which appellant was injured."); *Dardenne v. Jones*, 239 So. 2d 724, 726 (La. 1970) (holding, as a matter of law, no liability from first accident where second accident occurred during cleanup efforts approximately three hours later: "If these factors contributed to the situation as it existed when the accident happened, they are remote and not proximate causes of the accident."); *Anderson v. Jones*, 213 N.E.2d 627 (Ill. App. Ct. 1966) (finding, as a matter of law, absence of proximate cause between first accident and second accident three to ten minutes later: "The negligence of Jones created the conditions. The negligence of Zehr caused the injuries to the plaintiffs solely because he failed to see, observe and to act as the others did and as he might have done, had he acted and responded as a reasonably prudent man"); *Greenwood v. Vanarsdall*, 356 S.W. 2d 109, 113-14 (Mo. 1962) (deeming, as a matter of law, initial accident "a remote and intervening occurrence" in relation to second accident arising out of presence of investigative personnel in roadway: "When plaintiff received his injuries, whatever the defendant did or failed to do was done and finished. Fifty-five minutes had passed since the defendant's car had gone into the ditch. *That* particular chain of circumstances had ended.") (emphasis in original).

37. In addressing analogous circumstances, at least three federal circuits similarly have held as a matter of law that prior accidents were too remote to be deemed the proximate cause of subsequent accidents/injuries. *See, e.g., Baumann v. Zhukov*, 802 F.3d 950, 956 (8th Cir. 2015) (affirming judgment as a matter of law where second accident occurred "at least thirty-six minutes after the initial accident" and where numerous other vehicles had responded without incident to the alleged hazard created by the first accident); *Blood v. VH-1 Music Fest*, 668 F.3d 543, 548 (7th Cir. 2012) (affirming judgment as a matter of law where there was a four-hour separation between the two accidents and where other drivers had been able to avoid causing an accident within that period); *Clark v. EPCO Inc.*, 376 Fed. Appx. 427, 431 (5th Cir. 2010) ("Here, Harmon's negligent

act took place hours before the accident which killed the decedent, and contributed no more than the traffic jam which caused the decedent 'to be at a particular place at a particular time,' where the decedent lost his life 'as the result of the negligent act of another.'") (citation omitted).

38.     Consistent with the treatment afforded by the myriad jurisdictions to have addressed the issue, which in turn have applied virtually identical principles of proximate causation as those that exist in Alabama, this Court should deem the first accident too remote as a matter of law to support any reasonably possible claim arising out of an entirely separate fatal accident that occurred over two-and-a-half hours later in the opposite lane of travel. As astutely observed by another court on similar allegations:

> To allow this case to continue beyond summary judgment opens the door to endless liability, such that the first wrongdoer in a highway accident will forever be liable to all other drivers that follow. This is plainly a result that proximate cause analyses are designed to avoid.

*Blood*, 668 F.3d at 549 (emphasis added). *See also Greenwood*, 356 S.W. 2d at 114 ("Thus plaintiff carries the sequence and the causation on and on until the defendant, in letting his car overturn in the ditch, becomes a modern Phaethon, who, in letting his (father's) sunchariot run off the track, became responsible for all the following happenings on the earth, including the Ethiopians' turning black and the tear-born poplar trees along the River Eridanus.").

## III.     PROCEDURAL COMPLIANCE

39.     Removal is being filed within 30 days of commencement of the underlying action and is timely under 28 U.S.C. § 1446(b).

40.     Venue likewise is proper in this Court under 28 U.S.C. § 1446(b) on the basis that the Montgomery County Circuit Court is within the Northern Division of the United States District Court for the Middle District of Alabama.

41.     TSH submits herewith a written consent to removal executed by Faircloth as required by 28 U.S.C. § 1446(b)(2)(A). (*See* Exhibit "H" hereto). Because all remaining party

19

defendants have been fraudulently joined, their consent to removal is not required. *Id.* (providing that consent to removal is only required from "all defendants who have been properly joined") (emphasis added); *see also Maxwell v. E-Z-Go, A Division of Textron, Inc.*, 843 F.Supp. 2d 1209, 1213 (M.D. Ala. 2012) ("A fraudulently joined party is not properly joined and, accordingly, need not join or consent to the removal.").

42.     Pursuant to 28 U.S.C. § 1446(d), TSH  is serving this Notice of Removal upon counsel for Plaintiff and otherwise shall file a copy of this Notice of Removal with the Montgomery County Circuit Court Clerk in case number 2017-CV-900540.

43.     As required by 28 U.S.C. § 1446(a) and local rule 81.1, TSH is submitting herewith all process, pleadings, records, and proceedings from the Circuit Court of Montgomery County, Alabama, case number 2017-CV-900540. (*See* Exhibit "I" hereto).

## IV.     CONCLUSION

40.     Plaintiff has named as defendants the participants from the first accident (chiefly, Walter O. Griffin, Jr.) in an attempt to deprive this Court of jurisdiction and thereby prevent removal from the Circuit Court of Montgomery County, Alabama. If anything, however, the first accident was merely a remote cause—and not the proximate cause—of the fatal accident involving Gregory Quarles. It is undisputed that no injury accrued to Gregory Quarles from the first accident (*i.e.*, he was not present at the time of the first accident or physically impacted by any vehicle or debris from the first accident), and the evidence establishes that over two-and-a-half hours elapsed between the first accident and the fatal accident (which occurred on the opposite side of Interstate 85). Plaintiff therefore, as a matter of law, cannot demonstrate a reasonable possibility of stating a claim against any participant in the first accident. All participants from that accident have been fraudulently joined and are due to be dismissed from these proceedings.

**WHEREFORE,** Defendant Tennessee Steel Haulers, Inc. hereby removes this action from the Circuit Court of Montgomery County, Alabama and respectfully requests that this Court accept jurisdiction over further proceedings as though the action had originally been initiated in this forum.

Respectfully submitted,

**ROBERT F. NORTHCUTT (ASB: 9358-T79R)**
**CHAD W. BRYAN (ASB: 7754-H71B)**
*Attorneys for Tennessee Steel Haulers, Inc.*

OF COUNSEL:
**CAPELL & HOWARD, P.C.**
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8034
Facsimile: (334) 241-8234
Email: bob.northcutt@chlaw.com
        chad.bryan@chlaw.com

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May 2017, a copy of this document is being served by electronic and U.S. Mail to counsel for Plaintiff as indicated below:

Jere L. Beasley
J. Greg Allen
LaBarron N. Boone
BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Email: jere.beasley@beasleyallen.com
       greg.allen@beasleyallen.com
       labarron.boone@beasleyallen.com


I further certify that a copy of the foregoing also is being served on this date via U.S. Mail to the following parties:

Joshua Lawrence Faircloth
167 Calico Loop
Grantville, GA 30220

Walter O. Griffin, Jr.
237 Tensaw Road
Montgomery, AL 36117

Pedro H. Fernandez
313 Pinto Valle Drive
Laredo, TX 78045

Trans Texas Express, Inc.
c/o Samir P. Wehbe
313 Pinto Valle Drive
Laredo, TX 78045


_____
OF COUNSEL