IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAURA QUARLES, as the Administratrix of the Estate of Gregory Quarles, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:17-CV-308-WKW [WO] |
| TENNESSEE STEEL HAULERS, INC.; JOSHUA L. FAIRCLOTH; PEDRO H. FERNANDEZ; and TRANS TEXAS EXPRESS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

One night in 2017, there were two car accidents near Exit 11 on Interstate 85 in Montgomery. The first accident was at 5:50 p.m. in a southbound lane; the second was at 8:31 p.m. in a northbound lane. This case is about whether the first accident proximately caused the second. It did not. Defendants Pedro Fernandez and Trans Texas Express, Inc. are thus entitled to summary judgment.

### **I. JURISDICTION AND VENUE**

The court has subject-matter jurisdiction under 28 U.S.C. § 1332. (Doc. # 32.) The parties do not dispute personal jurisdiction or venue.

### **II. STANDARD OF REVIEW**

To succeed on a motion for summary judgment, the moving party must show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn from it, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the parts of the record that show there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1). A movant who does not bear a trial burden of production may also assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B).

If the moving party meets its burden, then the nonmoving party must present evidence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact-finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *see Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (noting "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion").

### III. FACTS

Interstate 85 is a main thoroughfare in Montgomery, Alabama. I-85 South

takes drivers past downtown Montgomery to an interchange with Interstate 65. I-85 North goes toward Atlanta. Around Exit 11 (also called the Chantilly Exit or the Mitylene Exit) in Montgomery, there are two lanes in each direction. A wide, grassy median separates northbound from southbound traffic.[1] On January 31, 2017, there were two major accidents near Exit 11. The first resulted in an overturned tractor-trailer. The second resulted in the tragic death of Gregory Quarles.

**A.     The 5:50 p.m. Southbound Accident**

On January 31, Pedro Fernandez was hauling lumber on behalf of his employer, Trans Texas Express, Inc. He was headed south on I-85. Walter Griffin was driving a pickup truck in the same direction. At 5:50 p.m., the passenger side of Fernandez's trailer collided with the driver's side of Griffin's pickup. The court assumes (without deciding) that Fernandez and Trans Texas are legally responsible for that collision. (Doc. # 1-8, at 2; Doc. # 70, at 7–32.)

The collision caused Fernandez's tractor-trailer to overturn into the median, which in turn caused the lumber on Fernandez's truck to spill into the median. Police officers and the fire department responded to the accident. The city also sent workers to pick up the lumber in the median. (Doc. # 73, at 42, 50; Doc. # 75-6, at 2.)

---

[1] In Montgomery, I-85 actually runs east–west. But as a whole, I-85 goes from Alabama to Virginia, so the Federal Highway Administration denotes it as a north–south route. The court thus refers to "northbound" and "southbound" traffic.

**B.     The 8:31 p.m. Northbound Accident**

Two hours and forty-one minutes after Fernandez overturned, city workers were still picking up lumber in the median. Police cars were still on the scene. Flashing lights — yellow ones on the cleanup crew's trucks, blue ones on the police cars — illuminated the area. (Doc. # 1-5, at 2; Doc. # 75-6, at 2.)

Traffic had backed up in both directions. Plaintiff concedes that "there were no obstructions" in either northbound lane. (Doc. # 75, at 10.) There is, after all, no evidence of any debris on I-85 North. Nor is there evidence that, at 8:31 p.m., the cleanup crew or emergency vehicles blocked either northbound lane. Nor is there evidence anyone told northbound drivers to avoid the left lane. Instead, one driver testified that he did not see anything blocking northbound traffic. (Doc. # 73, at 48–50.) But for some reason — maybe a blend of caution and gawking — northbound traffic was consolidated into the right lane. It was crawling along at just ten to fifteen miles an hour. (Doc. # 73, at 43–45, 50–52; Doc. # 75, at 7; Doc. # 75-6, at 2.)

George Randall was driving a tractor-trailer on I-85 North when he got stuck in this traffic jam. Gregory Quarles was driving a Jeep immediately behind Randall. Joshua Faircloth, who was driving a tractor-trailer for Tennessee Steel Haulers, Inc., was right behind Quarles. Randall and Quarles slowed down for traffic. Tragically, Faircloth did not. He instead plowed into Quarles at high speed — possibly at sixty-five miles an hour. The collision hurled Quarles's Jeep into the back of Randall's

tractor-trailer. Quarles died instantly from blunt-force trauma, and his car burst into flames. (Doc. # 73, at 44–46, 55, 59–60.)

There does not appear to be a reason Faircloth did not slow down or stop. The weather was clear. The road was dry. His brakes worked. Nothing blocked his view. He was not distracted by the cleanup crew. He somehow did not react to the flashing lights even though other drivers clearly did. (Doc. # 73, at 59–60.)

C.   **Procedural History**

In April 2017, Plaintiff Laura Quarles (the administrator of Gregory Quarles's estate) filed this wrongful death action against Fernandez, Trans Texas, Griffin, Faircloth, and Tennessee Steel Haulers in the Circuit Court of Montgomery County, Alabama. (Doc. # 1-1.) Plaintiff claims Defendants were negligent and wanton in violation of Alabama common law. (Doc. # 1-1, at 4–7.)

Defendants invoked diversity jurisdiction and removed the case from state court. (Doc. # 1.) Both Plaintiff and Griffin are Alabamians, which would normally keep the court from exercising diversity jurisdiction. But the court found that there was "no possibility" Griffin proximately caused Quarles's death. (Doc. # 32, at 8, 11.) And because Griffin could not be liable to Plaintiff, the court dismissed him as "fraudulently joined" and did not remand the case to state court. (Doc. # 37.)[2]

---

[2] The only reason that the court did not dismiss Fernandez and Trans Texas on proximate cause grounds was because they did not destroy diversity jurisdiction. (Doc. # 37, at 2 n.1.)

Fernandez and Trans Texas now move for summary judgment. (Doc. # 71.) They argue that just as Griffin could not be liable to Plaintiff, neither are they liable to Plaintiff. The motion has been fully briefed. (Docs. # 72, 73, 75, 80.) Fernandez and Trans Texas also move to strike some evidence Plaintiff submitted in opposition to summary judgment. (Doc. # 76.)

## IV. DISCUSSION

To prevail on either a negligence claim or a wantonness claim, Plaintiff must show that Fernandez and Trans Texas proximately caused Quarles's death. *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) ("Proximate cause is an essential element of both negligence claims and wantonness claims."). The undisputed material facts show that Plaintiff cannot meet that burden.

### A. **The Proximate Cause Requirement**

In legal terms, "the proximate cause of an injury is that cause which, in the natural and probable sequence of events, and without the intervention or coming in of some new or independent cause, produces the injury, and without which the injury would not have occurred." *Ala. Power Co. v. Moore*, 899 So. 2d 975, 979 (Ala. 2004) (cleaned up); *see also, e.g.*, *Thetford v. City of Clanton*, 605 So. 2d 835, 840 (Ala. 1992) ("Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred."). An intervening or independent cause

6

is something that breaks the chain of causation, thus making the defendant's action no longer the proximate cause of the plaintiff's injury. *Moore*, 899 So. 2d at 979. To break the causal chain, however, an intervening cause "must (1) occur after the defendant's [wrongful] act, (2) be unforeseeable to the defendant at the time he acts, and (3) be sufficient to be the sole cause-in-fact of the plaintiff's injury." *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (cleaned up).

In more practical terms, "proximate cause hinges on foreseeability." *Springer v. Jefferson Cty.*, 595 So. 2d 1381, 1384 (Ala. 1992); *see Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976) ("The key here is foreseeability."). To be foreseeable, harm must be more than merely possible. *Moore*, 899 So. 2d at 979. Instead, the proximate cause doctrine looks at the probability of harm and determines whether the defendant should be legally responsible for the plaintiff's injury. *Id.* That is usually a question for the jury. *Id.* But if there are no disputed material facts, and if no reasonable juror could find that the defendant proximately caused the plaintiff's injury, courts decide proximate cause. *Id.* at 980; *Prill*, 23 So. 3d at 12.

Precedent illustrates this doctrine. In *City of Mobile v. Havard*, for example, an overloaded soybean truck with defective brakes rear-ended a car in a tunnel. 268 So. 2d 805, 806–07, 809 (Ala. 1972). Gasoline fires broke out, but the firefighting equipment in the tunnel was allegedly either defective and inadequate, and the driver who was rear-ended died of severe burns. The driver's estate sued the engineering

firm responsible for inspecting the tunnel's firefighting equipment, and a jury delivered a verdict for the plaintiff. *Id.* at 807. But the Alabama Supreme Court reversed, holding the engineering firm did not proximately cause the driver's death. Rather, the soybean truck was an independent and intervening cause. *Id.* at 809–10.

In *Morgan v. City of Tuscaloosa*, a drainage sewer was either negligently built or negligently maintained, so it did not properly drain water from the street. 108 So. 2d 342, 344 (Ala. 1959). Water thus pooled on the street. A driver drove too quickly into the impounded water, "causing the water to be splashed or sprayed onto his windshield, blinding the driver or obstructing his vision." *Id.* Unable to see, the driver hit a child crossing the street. *Id.* The court held that any negligence in building or maintaining the drain "was nothing more than a remote cause of the accident." *Id.* at 345. The negligent driver was an independent cause of the accident, and he was solely responsible for it. *Id.*

In both *Havard* and *Morgan*, the Alabama Supreme Court determined that the defendant could not have proximately caused the plaintiff's injury. But in different scenarios, the court left the issue to the jury. In *Hilburn v. Shirley*, the defendant darted in front of the plaintiff's tractor-trailer, causing an accident. 437 So. 2d 1252, 1253 (Ala. 1983). As soon as the plaintiff stopped, he leapt out of his truck to see if the defendant was hurt. The six-foot jump from the truck to the ground injured the plaintiff's back. *Id.* The court held that the accident could have proximately caused

8

the plaintiff's back injury. *Id.* at 1254. The jump was not an intervening cause because it was foreseeable that one driver in an accident might hurry to check on another driver. *Id.*

There was no intervening cause in *Thompson v. White*, either. 149 So. 2d 797, 804 (Ala. 1963). There, a gas station hired clowns to perform at an intersection. The clowns were *on* the road, and they distracted one driver who rear-ended another. The driver who was rear-ended sued the gas station. *Id.* at 800. The court held that it was foreseeable that clowns on a road might distract drivers, so any negligence by the distracted driver was not an intervening cause. *Id.* at 803–04.[3]

B. **Fernandez and Trans Texas did not proximately cause Quarles's death.**

No reasonable juror could find that Fernandez and Trans Texas proximately caused Quarles's death. There was no uninterrupted natural, probable, or continuous sequence from Fernandez's allegedly wrongful actions to Quarles's death. Instead, Faircloth's actions broke the chain of causation. Faircloth's intervening negligence was unforeseeable, and it was enough to be the sole cause-in-fact of Quarles's death.

There are four overlapping reasons for this conclusion. First, there was a long delay between the first accident and the second accident — from 5:50 to 8:31 p.m.

---

[3] Note that if the clowns had only been *near* the road, the gas station could not have been liable. *Thompson*, 149 So. 2d at 802 (explaining "that the act of causing clowns to perform near a highway, without more, does not constitute a breach of the duty owed by the owner of a lot abutting a highway to exercise reasonable care so as not to injure persons traveling on the highway").

To be more specific, there was a two hour and forty-one minute gap between Fernandez's supposed negligence and Quarles's death. (Plaintiff does not argue that Fernandez was negligent after his accident with Griffin. Instead, any negligence by Fernandez ended at 5:50 p.m.) This is unlike *Hilburn*, where the plaintiff hurt his back moments after (and during a physical response to) the defendant's negligence. 437 So. 2d at 1254. Simply put, Fernandez could not have expected the results of his actions to last more than two-and-a-half hours. Other jurisdictions have reached the same conclusion when the second accident was much sooner than the one here.[4]

Second, when Quarles got stuck in traffic, the scene was stable. The police had assumed control. Flashing yellow and blue lights illuminated the area. Traffic was moving, albeit slowly, in both directions. And for over two-and-a-half hours, other cars and trucks safely drove past the first accident. Drivers might have gawked, but they were safe. It was unforeseeable that Faircloth would fail to slow down or stop for traffic under these conditions. Again, other jurisdictions agree.[5]

---

[4] *See, e.g.*, *O'Connor v. Nigg*, 838 P.2d 422, 425 (Mont. 1992) (holding no proximate cause; ten-minute gap); *Williams v. Smith*, 314 S.E.2d 279, 280 (N.C. Ct. App. 1984) (twenty to forty-five minutes); *Hale v. Brown*, 167 P.3d 362, 363 (Kan. Ct. App. 2007) (thirty-five minutes), *aff'd*, 197 P.3d 438 (Kan. 2008); *Baumann v. Zhukov*, 802 F.3d 950, 956 (8th Cir. 2015) (forty minutes); *Southwell v. Riverdale Transit Corp.*, 540 N.Y.S.2d 425, 426 (App. Div. 1989) (forty-five minutes); *Howard v. Bennett*, 894 N.W.2d 391, 396 (S.D. 2017) (one-and-a-half hours); *Clark v. EPCO Inc.*, 376 F. App'x 427, 431 (5th Cir. 2010) (per curiam) (two hours).

[5] *See, e.g.*, *Howard*, 894 N.W.2d at 396 (holding no proximate cause; relying on police presence, flowing traffic, and the lack of other accidents); *Baumann*, 802 F.3d at 956 (relying on the lack of other accidents); *Blood v. VH-1 Music First*, 668 F.3d 543, 548 (7th Cir. 2012) (relying on the fact that "the force of the first accident was spent" and the lack of other accidents); *Jackson*

Third, there is no evidence that Fernandez's overturned tractor-trailer (or the lumber he was hauling) blocked northbound traffic. Fernandez contributed nothing more to Quarles's death than the need for cleanup efforts and a resulting traffic jam. No one involved in the first accident was physically involved in the second. Fernandez was also on I-85 South, while Quarles and Faircloth were on I-85 North. It was not foreseeable that someone coming from the other direction would make no effort to safely navigate a traffic jam and a cleanup crew.[6]

Finally, Faircloth acted egregiously. The road was dry, the weather was clear, he had a clear view, and his brakes worked. Everyone else slowed down for traffic. But Faircloth barreled through at high speed. Fernandez could not have foreseen that.[7] Put differently, Faircloth did not respond to what Fernandez allegedly caused. That is unlike *Thompson*, where the gas station wanted drivers to see clowns on the road and the clowns then distracted a driver. 149 So. 2d at 804.

---

v. *Howell's Motor Freight, Inc.*, 485 S.E.2d 895, 900 (N.C. Ct. App. 1997) (relying on the fact that police officers had taken control of the scene); *Haworth v. Mosher*, 395 F.2d 566, 569 (10th Cir. 1968) (holding once another driver "came to a complete rest without collision or injury," the causal chain broke).

[6] *See, e.g.*, *Clark*, 376 F. App'x at 431 (holding no proximate cause when defendant "contributed no more than the traffic jam"); *Dee v. Johnson*, 286 P.3d 22, 23 (Utah Ct. App. 2012) (holding no proximate cause where plaintiff hit a tow truck that partially obstructed road as it pulled defendant's car out of the median); *Dardenne v. Jones*, 239 So. 2d 724, 726 (La. Ct. App. 1970) (holding no proximate cause where defendant's vehicle and winch truck partially obstructed road and a driver who swerved into oncoming traffic to avoid the obstruction hit plaintiff).

[7] *See, e.g.*, *Baumann*, 802 F.3d at 956 (relying on the obviousness of the hazard); *O'Connor*, 838 P.2d at 425 (relying on the fact that the driver did not notice flashing police lights).

**C.     Plaintiff's arguments against summary judgment are not persuasive.**

Fernandez and Trans Texas are, for the reasons above, entitled to judgment as a matter of law.  Plaintiff argues against summary judgment, but her effort fails.

   **1.     *Language Ability***

Plaintiff makes an issue of Fernandez's inability to speak English.  It is true that Fernandez, a Mexican citizen, cannot speak English.  (Doc. # 73, at 35; Doc. # 75-2, at 9.)  As a result, it was illegal for him to drive a commercial vehicle in the United States.  49 C.F.R. § 391.11(b)(2).  But at the same time, Fernandez had an employment visa and a Mexican driver's license.  (Doc. # 81, at 5.)  That made it legal for him to drive under Alabama law.  Ala. Code § 32-6-10.  More importantly, Fernandez's ability to speak English in no way contributed to this accident.  It is thus irrelevant and inadmissible.  *See Giles v. Gardner*, 249 So. 2d 824, 827 (Ala. 1971).

   **2.     *Sudden Emergency Defense***

Next, Plaintiff argues that Fernandez and Trans Texas tacitly admitted that the first accident "created a hazardous condition affecting the northbound lanes of I-85 that caused the second accident." (Doc. # 75, at 17.)  This supposed admission came when Fernandez and Trans Texas preserved a "sudden emergency" defense in their Answer.  (Doc. # 43, at 4.)  Under the sudden emergency doctrine, "a person faced with a sudden emergency calling for quick action is not held to the same correctness of judgment and action that would apply if he had the time and opportunity to

consider fully and choose the best means of escaping peril or preventing injury." *Bettis v. Thornton*, 662 So. 2d 256, 257 (Ala. 1995) (cleaned up).

This argument fails. For one, the sudden emergency defense does not apply to a dangerous condition *after* the accident. Instead, it is an argument that Fernandez had a lower duty of care *while he was driving*. Moreover, a defendant "may state as many separate . . . defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see Verderane v. Jacksonville Shipyards, Inc.*, 772 F.2d 775, 779 (11th Cir. 1985). So even if a sudden emergency defense would concede there was a dangerous condition after the first accident (it would have had to preexist that accident), Fernandez and Trans Texas could still rely on their proximate cause defense. (Doc. # 43, at 3.)

### 3. *Screenshots of a Video*

In its evidentiary submission, Plaintiff included five screenshots of a video that an unidentified "passerby" made of the first accident scene "sometime before the Quarles crash." (Doc. # 75-3, at 2.) The screenshots are said to depict firetrucks and a police car partially blocking the left lane on I-85 North. (Docs. # 75-3, 75-4.) A threadbare affidavit from Plaintiff's attorney accompanies these screenshots.

It is hornbook evidence law that, for a photograph to be admissible, there must be evidence that the photo fairly and accurately depicts its subject. *See* 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 9:23 (4th ed. 2013 & Supp.

2018); 2 Kenneth S. Broun et al., *McCormick on Evidence* § 215 (7th ed. 2013 & Supp. 2016); 3 John H. Wigmore, *Evidence in Trials at Common Law* § 790 (Chadbourn rev. ed. 1970). Yet there is no evidence that the screenshots here fairly and accurately depict the scene of the first accident. Nor is there evidence of how the screenshots were made.

This is not to say that Plaintiff must identify who filmed the video or took the screenshots. *See United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. Unit B April 1981) ("A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."). But the affidavit from Plaintiff's attorney merely says that a "passerby" made the video "sometime before" the second accident. The attorney does not represent that he has personal knowledge of the accident scene. He does not assert that the screenshots fairly and accurately depict the scene. Thus, the screenshots are inadmissible.

But even if the screenshots were admissible, they would not defeat summary judgment. That is because there is no evidence that the screenshots depict conditions at the time of the second accident. The screenshots purportedly show that "sometime before" 8:31 p.m., Fernandez's tractor-trailer was in the median and emergency vehicles were in the left northbound lane. Yet Plaintiff concedes that, at 8:31 p.m., no emergency vehicles blocked I-85 North. (Doc. # 75, at 10.) To be clear: Plaintiff

admits that the scene looked different at the time of the second accident. That means the screenshots are of little value. And to the extent that the screenshots matter, they do not affect the conclusion that there is no proximate causation.

   4. *Accident Reports*

Plaintiff's evidentiary submission includes two Uniform Accident Reports — one from each accident. Under Alabama law, "accident reports made by persons involved in accidents" may not be used as evidence "in any trial, civil or criminal, arising out of an accident." Ala. Code § 32-10-11; *see Mainor v. Hayneville Tel. Co.*, 715 So. 2d 800, 802 (Ala. Civ. App. 1997) ("Section 32-10-11 provides that no Alabama Uniform Accident Report shall be used as evidence in any civil or criminal trial arising out of an accident."). That rule applies here, meaning that the reports are inadmissible. Fed. R. Evid. 501; *cf. Cardona v. Mason & Dixon Lines, Inc.*, 737 F. App'x 978, 981 (11th Cir. 2018) (per curiam). Even if they were admissible, though, nothing in them would affect the court's decision.

   5. *Declaration Without Oath*

Finally, Plaintiff presents a statement from Brittany Boston, who claims that she saw Faircloth rear-end Quarles. Boston represents that her statement "is true and accurate to the best of [her] knowledge and belief." (Doc. # 75-7.) But her statement is not notarized. Nor does it state "under penalty of perjury" that it "is true and correct." 28 U.S.C. § 1746. It is not even dated. *Id.* That means "the court

may not consider [it] in determining the propriety of summary judgment." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam); *see also Grimsley v. Palm Beach Credit Adjusters, Inc.*, 691 F. App'x 576, 579 (11th Cir. 2017) (per curiam) (stating that "unsworn assertions . . . cannot create a genuine issue of material fact to defeat summary judgment"). Once again, though, this evidence does not create a genuine dispute of material fact. It says nothing about the cause of the second accident other than it appeared to the witness that Faircloth was going fast.

## V. CONCLUSION

For the reasons above, it is ORDERED that:

1. Defendants Pedro Fernandez and Trans Texas Express, Inc.'s Motion for Summary Judgment (Doc. # 71) is GRANTED.

2. Defendants Pedro Fernandez and Trans Texas Express, Inc.'s Objection and Motion to Strike (Doc. # 76) is GRANTED to the extent provided in this Order.

3. There being no just reason for delay, this Order is final and appealable as to Defendants Pedro Fernandez and Trans Texas Express, Inc. Fed. R. Civ. P. 54(b).

DONE this 20th day of February, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE